IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROLAND CARLY SAINTLOT
DOC# Y45056,

    Plaintiff,

vs.                              Case No. 3:18-cv-441-MCR-EMT

WHITEHEAD, ET AL.,

    Defendants.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Christopher Whitehead**, **Lee Peacock III**, **Jonathan Johnson, Raymond Konzelman, Robert Putnam, James McClain, and Richard Kerns** ("Defendants"), through counsel, hereby move for partial Summary Judgment in their favor pursuant to Rule 56, Fed. R. Civ. P., and Rule 56.1, N.D. Fla. Loc. R., and allege the following in support thereof:

## STATEMENT OF MATERIAL FACTS

On March 15, 2018, Roland Carly Saintlot ("Plaintiff") filed his Complaint with this Court. *See* (Doc. 1).[1] Plaintiff is proceeding on a Fourth an Amended Complaint. (Doc. 66). Plaintiff is proceeding *pro se* and is a prisoner in the custody

---

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

1

of the Florida Department of Corrections ("FDOC") currently housed at Columbia Correctional Institution. (Doc. 47-2) Plaintiff's allegations are based a use of force conducted on Plaintiff on November 10, 2016. (Doc. 66).

On November 10, 2016, Plaintiff was housed in cell Q2116S at Santa Rosa Correctional Institution, Annex. (Docs. 47-3 through 47-6) At approximately 2:08 PM, Plaintiff was found lying on the floor near his cell door. (Docs. 47-3 through 47-6) Plaintiff appeared immobile and unresponsive. (Docs. 47-3 through 47-6) Based on Plaintiff's behavior, Defendants attempted to gain a response from Plaintiff, without any success. (Docs. 47-3 through 47-6) Plaintiff did not respond to any requests for a response. (Docs. 47-3 through 47-6)

Based on Plaintiff's behavior, the shift supervisor was contacted, who indicated that a life-safety check would be necessary to determine Plaintiff's wellbeing. (Docs. 47-3 through 47-6) A life-safety check is an entry into a cell to determine whether an inmate needs medical attention or is in distress after an inmate is unresponsive to orders. (Docs. 47-3 through 47-6) Based on Plaintiff's actions, Defendant Whitehead then obtained a non-electric, concave Plexiglass shield and obtained assistance from additional officers. (Docs. 47-3 through 47-6) The officers who arrived at cell front were Robert Putnam, James McClain, Richard Kerns, Christopher Whitehead, Lee Peacock, and Raymond Konzelman. (Docs. 47-3

through 47-6) Once the additional officers arrived, the officers entered the cell, with Defendant Whitehead entering first behind the shield. (Docs. 47-3 through 47-6)

Upon entry into the cell, Plaintiff stood up, and attempted to strike Defendant Whitehead with a close fist multiple times, striking the shield each time. (Docs. 47-3 through 47-6) Based on Plaintiff's behavior, Defendant Whitehead utilized the shield to pin Plaintiff to the floor of the cell. (Docs. 47-3 through 47-6) Even though Plaintiff was pinned to the floor, he continued to resist and made it difficult to apply restraints. (Docs. 47-3 through 47-6) Both Defendant Whitehead and Officer Putnam forced Plaintiff to a prone position on the floor, forced his hands behind his back, and applied wrist restraints. (Docs. 47-3 through 47-6) Meanwhile, Defendant Johnson and Officer McClain pinned Plaintiff's legs to the floor and applied leg restraints. (Docs. 47-3 through 47-6) Once the restraints were applied, Plaintiff ceased his combative behavior. (Docs. 47-3 through 47-6)

After the use of force was completed, Plaintiff was escorted to the Q-Dormitory medical triage room to receive a post use of force examination. (Docs. 47-3 through 47-6; 47-8 through 47-14) Plaintiff's medical records stemming directly from the incident demonstrate that he had some bleeding from his bottom lip, his left eye was red and swollen, and his left knuckles were red with minor abrasions at the time of the medical assessment immediately after the incident. (Doc. 47-3 at 11-12; 47-9 at 22-23) After Plaintiff's medical examination was completed,

Plaintiff was placed back into his cell, and no further actions were taken. (Docs. 47-3 through 47-6)

After the use of force concluded, Defendant Whitehead created and completed a Use of Force Report (Log # 16-20611) describing the events that occurred with Plaintiff. (Docs. 47-3 through 47-4) Each of the Defendants and the other involved individuals submitted statements based on their actions during the use of force. (Docs. 47-3 through 47-6) Based on a review of the use of force, both the facility and the Inspector General's Office determined that the officers' actions were appropriate based on the governing Rules and Procedures. (Docs. 47-3 through 47-6)

## MEMORANDUM OF LAW

### Standard for Summary Judgment

Summary Judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for Summary Judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. *Id*.

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are 'implausible.' *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, Summary Judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported Summary Judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). For the factual issues to be genuine, they must have a real basis in the record, cannot be based merely on "information and belief" or unsupported factual allegations. *Earley*, 907 F.2d at 1081. Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of Summary Judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). *See also* Rule 56(c), Fed. R. Civ. P.

In *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit clarified its earlier rulings on this point by indicating that their cases applying *Celotex* read *Celotex* "as simply allowing *otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment stage, though at trial it

must be submitted in admissible form." The Court continues to apply this principle. *See McCaskill v. Ray*, 279 Fed.Appx. 913, 914 (11th Cir. 2008). However, the court was clear that "potential impeachment evidence [although admissible] . . . may not be used to create a genuine issue of material fact for trial" that would defeat a Motion for Summary Judgment. *McMillian*, 88 F.3d at 1584.

I.      **Plaintiff is not entitled to compensatory or punitive damages.**

Plaintiff fails to state a claim which would entitle him to compensatory or punitive damages as he fails to state a physical injury which is greater than *de minimus*. As such, Plaintiff's request for damages from Defendants must be dismissed pursuant to 42 U.S.C § 1997e(e).

"No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Eleventh Circuit is in accord that, under 42 U.S.C. § 1997e(e), compensatory and punitive damages are unavailable absent physical injury. *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury; *Smith v. Allen,* 502 F.3d 1255, 1271 (11th Cir. 2007) (stating that § 1997e(e) precludes an inmate's claims

7

for compensatory and punitive damages without a prior showing of physical injury); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated"). The physical injury requirement applies to all federal claims, including constitutional claims. *Harris v. Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000).

While 42 U.S.C. § 1997e(e) does not define "physical injury," the Eleventh Circuit has held that to satisfy the statute, the physical injury must be more than minimal, but need not be significant. *Daughtry v. Moore*, Slip Copy, 2009 WL 1151858, *5 (S.D. Ala. 2009), citing *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). *See also Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated, 197 F.3d 1059, reinstated in relevant part, 216 F.3d 970, 972 (11th Cir. 2000) (en banc); *Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir. 2003); *Oliver v. Keller*, 289 F.3d 623, 626-628 (9th Cir. 2002); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997), abrogated on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010). In explaining the type of injury which is not barred by 28 U.S.C. § 1997e(e), some courts have proffered the following common-sense approach; "would the injury **require** or **not require** a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?"

*Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (emphasis added). Stated another way:

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which last even up to two or three weeks. People in regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains.

*Talley v. Johnson*, 2008 WL 2223259, *3 (M.D. Ga. 2008) (citing *Luong*). See also *Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x. 555, 557 n.3 (11th Cir. 2014) (per curiam) (unreported op.) (citing *Luong*); *Brown v. McGowan*, 2014 WL 4538056, *7 (N.D. Fla. 2014) (same); *Kirkland v. Perkins*, 2014 WL 1333214, *13 n.7 (S.D. Fla. 2014) (same).[2]

---

[2] To the extent that the Eleventh Circuit has recently spoken to the definition of *de minimus* injury in *Thompson v. Smith, et al.*, No. 18-11671 2020 WL 1189387 (11th Cir. Mar. 12, 2020), the Court found there that the use of chemical agents may give rise to a great than *de minimus* injury, however, that case is not analogous to either the situation or alleged injury here as no chemical agents were involved in this incident. Further, that case was an unpublished opinion that was released less than a month prior to the opinion in *Pierre v. Padgett*, No. 18-12276, 2020 WL 1650656, at *4 (11th Cir. Apr. 3, 2020) which reinforced the tenet that "it is undisputed that Plaintiff healed without the need for any medical treatment" which constitutes *de minimus* injury in a situation where an inmate suffered only "scrapes, scratches, and minor bruising or swelling."

Further, the Eleventh Circuit has held that *Harris* and its progeny determined that § 1997e(e) foreclosed claims for both compensatory and punitive damages. *Al-Amin v. Smith*, 637 F.3d 1192, 1197-98 (11th Cir. 2011); *Fraizer v. McDonough*, 264 F. App'x 812, 815 (11th Cir. 2008). Nominal damages, however, are not precluded by § 1997e(e). *Fraizer*, 264 F. App'x at 815; *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277, 283 n.3 (2011). Nominal damages are appropriate "if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003).

In this case, Plaintiff's injuries do not rise to a level which is greater than *de minimus* in nature. Plaintiff's medical records stemming directly from the incident demonstrate that he had some bleeding from his bottom lip, his left eye was red and swollen, and his left knuckles were red with minor abrasions at the time of the medical assessment immediately after the incident. (Docs. 47-3 at 11-12; 47-9 at 22-23) Plaintiff's allegations and conclusory statements that he suffered a chipped tooth and fractured hand are not supported by the medical records since the date of the incident. *Compare* (

2016 incident is in a medical record dated January 29, 2018 – over a year later. (Doc. 57-12 at 73)

Notably, the earliest Plaintiff complains about the issue with his hand was on a medical record dated January 5, 2017. (Doc. 47-9 at 98) Plaintiff again complains about his wrist on February 4, 2018 and February 6, 2018. (Doc. 57-12 at 81, 83) Plaintiff again complains of an injury to his wrist on February 25, 2018, and he indicates the injury "start last week Monday – till now." (Doc. 47-12 at 91) Plaintiff later complains about his wrist on November 29, 2018, December 20, 2018, and January 8, 2019. (Doc. 47-14 at 29-30, 39-40, 42) No further complaints are made about Plaintiff's wrist. (Docs. 47-8 through 47-14)[3]

The earliest medical record related to Plaintiff's teeth is dated May 8, 2017, where Plaintiff complains about pain in his teeth. (Doc. 47-11 at 31) Plaintiff later complains about his teeth again on May 9, 2017, but states that it "started last week Friday." *See Id*. at 35. Plaintiff then later complains about allegedly chipping his teeth but makes no mention of the November 10, 2016 incident during the complaint. *See Id*. at 41. No further complaints are made about Plaintiff's teeth. (Docs. 47-8

---

[3] Notably, there are several apparent injuries to Plaintiff's right wrist starting on January 11, 2017, but none of the injuries appear linked to the November 10, 2016 use of force. (Docs. 47-9 at 100; 47-11 at 73)

through 47-14) As a result, based on Plaintiff's injuries not being greater than *de minimus* in nature, Plaintiff is not entitled to compensatory or punitive damages.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request this Court enter partial Summary Judgment in their favor as to Plaintiff's requests for compensatory and punitive damages.

    Respectfully Submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

/s/ Kristen J. Lonergan
Kristen J. Lonergan
Assistant Attorney General
Florida Bar No.: 125556
Kristen.Lonergan@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Motion for Summary Judgment* was e-filed electronically through CM/ECF on June 12, 2020, and furnished by U.S. Mail to: Roland Saintlot, DOC# Y45056, Santa Rosa Correctional Institution, 5850 East Milton Rd., Milton, Florida 32583-7914 on this June 12, 2020.

/s/ Kristen J. Lonergan
Kristen J. Lonergan

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Motion totals 2854 words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

/s/ Kristen J. Lonergan
Kristen J. Lonergan