## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ROLAND CARLY SAINTLOT,**

      **Plaintiff,**

**vs.**                             **CASE NO. 3:18-CV-00441-TKW-MAF**

**CHRISTOPHER WHITEHEAD,**
**et al.,**

      **Defendants**
_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Roland Carly Saintlot, an inmate proceeding *pro se*, initiated this civil rights action and was granted leave to proceed *in forma pauperis*. ECF No. 1, 4. Saintlot's fourth amended complaint, ECF No. 66, was served upon Defendants following Defendants' First Motion for Summary Judgment (ECF No. 47). This Cause is currently before the Court upon Defendants' Motion for (Partial) Summary Judgment, which relies on the exhibits provided in their first motion. ECF No. 106.

After careful review, for the reasons stated below, Defendants' Motion for Summary Judgment, ECF No. 106, should be DENIED and the case should proceed to trial.

## I. Allegations of Saintlot's Amended Complaint, ECF No. 66

Saintlot sues seven Defendants, correctional officers employed at Santa Rosa Correctional Institution Annex (Santa Rosa), as follows:

1. Christopher Whitehead,

2. Lee Peacock,

3. Johnathan Johnson,

4. Robert Putnam,

5. James McClain,

6. Richard Kerns, and

7. Raymond Konzelman.

ECF No. 66, pp. 3-4. Saintlot sues all Defendants in their individual capacities. Id., p. 8. Saintlot claims that on November 10, 2016, while he was housed at Santa Rosa in a "mental health dorm," Cell Q2116S - Q Wing 2, Defendants attacked him. Id., p. 9. Saintlot claims that between 10:00 a.m. and 11:00 a.m., he had an argument with Defendants Whitehead and Putnam. Id. After the argument ended, approximately four or five hours later, Putnam and Whitehead returned with the other five Defendants (Johnson, a sergeant at the time; McClain; Kerns; Peacock; and Konzelman) and "staged a false use of force" incident to extract Saintlot from his cell. Id. According to Saintlot, the officers falsely identified Saintlot as "unresponsive" in order to

justify their entrance into his cell as a "life safety check." Id. Saintlot maintains that he was not unresponsive but "was sleeping in the corner." Id.

Saintlot alleges the Defendants began beating him "by punching and kicking him in the head, face, and upper torso repeatedly for approximately 2 to 3 minutes non-stop while giving" him "orders to . . . stop resisting them." Id. Saintlot maintains he never resisted the officers' commands. Id. He alleges he did "ball up and try to cover himself to protect him[self] . . . from the relentless physical beating and assault." Id. Saintlot claims the assault was recorded "on the handheld camera . . . by the lieutenant or Captain . . . Janine Cannon" who was "on duty." Id., p. 10. He alleges he "was never given the opportunity to submit to hand restraints," Defendants did not knock on his cell door, and they did not contact a nurse for the "life safety check." Id.

As a result, Saintlot suffered bleeding from his mouth, swelling to the left side of his face, left hand abrasions across the knuckle, chipped teeth, a fractured right hand, emotional and psychological injury, humiliation, embarrassment, and constant fear. Id., pp. 10-11. Saintlot seeks $100,000 in compensatory damages; $100,000 in punitive damages; a declaration that the practices and omissions violated his constitutional rights; retention of jurisdiction over Defendants until the practices and omissions no longer

exist; reasonable attorney's fees; and any other relief the Court deems proper. Id., pp. 12-14.

## II.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for her motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need

Case No. 3:18-CV-00441-TKW-MAF

not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, supra).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.    Defendant's Motion for Partial Summary Judgment, ECF No. 106

Defendants assert that, on the day of the alleged incident, at approximately 2:08 p.m., Saintlot was found lying on the floor near his cell

door and appeared immobile and unresponsive. ECF No. 106, p. 2. Without providing any details, Defendants claim they "attempted to gain a response from Plaintiff, without any success." Id. The shift supervisor was contacted and indicated a "life-safety check[1] would be necessary to determine Plaintiff's wellbeing." Id. "Defendant Whitehead obtained a non-electric, concave Plexiglass shield and obtained assistance from" the remaining Defendants. Id. Whitehead entered the cell first while behind the shield. Id., p. 3. When he entered, "Plaintiff stood up and attempted to strike Defendant Whitehead with a close[d] fist multiple times, striking the shield each time." Id. Using the shield, Whitehead pinned Saintlot to the floor, but he continued to resist. Id. Then, Whitehead and Putnam "forced Plaintiff to a prone position on the floor, forced his hands behind his back, and applied wrist restraints." Id. Next, Defendants Johnson and McClain "pinned Plaintiff's legs to the floor and applied leg restraints." Id. At that point, Saintlot ceased being "combative." Id.

In support, Defendants provide, nearly identical, sworn declarations by just three of the defendants: Whitehead (ECF No. 47-4, pp. 1-3), Peacock

---

[1] According to Defendants, a "life-safety check is an entry into a cell to determine whether an inmate needs medical attention or is in distress after an inmate is unresponsive to orders." ECF No. 106, p. 2.

(ECF No. 47-5, pp. 1-3), and Johnson (ECF No. 47-6, pp. 1-3). Defendants also rely on Use of Force Report #16-20611 (ECF No. 47-3, pp. 1-2), the incident reports (ECF No. 47-3, pp. 3-10), and the disciplinary reports (ECF No. 47-15, pp. 1-2; ECF No. 47-3, pp. 17-18).

Defendants escorted Saintlot to a medical unit for a post-use-of-force examination. Id. Saintlot "had some bleeding from his bottom lip, his left eye was red and swollen, and his left knuckles were red with minor abrasions." Id. Afterward, Saintlot was returned to his cell. Id., p. 4. Whitehead reported the incident by filing a "Use of Force Report" (Log 16-20611). Id. Defendants claim that the prison and Inspector General's Office determined their actions were appropriate and, in support, rely on Whitehead's, Johnson's, and Peacock's declarations; the use of force report; and the incident report (see ECF Nos. 47-3 through 47-6). Id.

Defendants assert that Saintlot fails to state a claim that would warrant compensatory or punitive damages because he cannot demonstrate a physical injury which is greater than *de minimus*, which they argue is supported by the medical records provided. Id., pp. 7-10. They claim Saintlot's allegations that he suffered a chipped tooth and fractured hand are not supported by the medical records given the date of the incident. Id., p. 10. Defendants are mistaken that the first medical record supporting

Saintlot's allegations of injury is dated January 29, 2018, more than one year after the incident. Id., p. 11. Review of the medical exhibits submitted reveals that the first record supporting Saintlot's allegations is the medical report from the date of the incident and then again in January 2017, which is detailed in the Discussion section below. Defendants submitted nearly 700 pages of Saintlot's medical records, much of which is irrelevant.[2] ECF No. 47-8 through ECF No. 47-14. The Court has meticulously reviewed these records.

## IV.    Saintlot's Response, ECF No. 112

Saintlot largely reiterates his allegations in his response to Defendants' motion to dismiss. ECF No. 112, pp. 1-5. Saintlot claims that a "genuine issue" in this case is whether the force used was applied in a good faith effort to maintain or restore discipline or to maliciously and sadistically cause harm. Id., pp. 5-6. Saintlot claims that there are several "genuine issue(s)" of "material fact." Id. First, the incident was "completely unprovoked" because he was asleep and on heavy medication (relating to his mental health condition) at the time Id. pp. 5-6, 12. Second, Saintlot claims he was not

---

[2] These records include discussion of a variety of health conditions unrelated to those at issue in this case (i.e. hypertension, seizure disorder, rashes, unrelated laboratory testing, and other injuries).

disobedient and did not resist officers when they came into his cell. Id., pp. 4-5. Third, Saintlot maintains that his injuries are more than *de minimus* because he had a bloody mouth, his left eye was red and swollen, the left side of his face was swollen so that the nurse could not see his broken tooth, and his right hand was fractured. Id., pp. 8-10. Saintlot asserts that the medical records he submits as Exhibit A and the video footage (hand-held and fixed wing cameras) support his allegations. Id. He also claims some of the medical records are incorrect or missing. Saintlot alleges that one of the incident reports is falsified, though he does not identify which one. Id., p. 11.

He admits that he suffered a broken tooth from a previous use of force incident documented in his medical records but that the November 10th incident resulted in injury to a second tooth. Id., pp. 15, 19. Saintlot claims that the reason there is no medical record about his hand on the date of the incident is because a nurse failed to look at his hand. Id., p. 15. He then states that he "had no way to go to medical" during November or December until January 17, 2017, when he was transferred to Lake Correctional Institution (Lake C.I.) because he was afraid of getting beat up again. Id. Saintlot claims he does not know what happened to his medical records from Lake C.I. or Union. Id., pp. 15-16. Saintlot states that a doctor did examine his right hand, but the report is missing. Id., p. 16. He claims he filed a request

for "sick call" about his hand during February 2018 and refers the Court to review his medical exhibits attached to his response. Id. He admits his "mental health status is very fragile" and that he has a "long history of mental illness." Id., pp. 1-2.

## V.   Discussion

### A.   Whether Defendants Used Excessive Force in Violation of the Eight Amendment is a Genuine Issue of Material Fact for Trial.

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010). See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013) ("[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence").

To establish excessive force, the force must have been "sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). Evidence viewed in the light most favorable to the plaintiff must go "beyond a mere dispute over the reasonableness of the force used" and must "support a reliable inference of wantonness in the infliction of pain." Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987). "[A] good-faith effort to maintain or restore discipline' does not give rise to an Eighth Amendment violation . . . the malicious or sadistic application of force to cause harm does." Thomas v. Comstock, 222 F. App'x 439, 441-42 (5th Cir. 2007) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). However, once a prisoner has been subdued, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) (citation omitted) (further affirming denial of summary judgment where broken ribs were beyond *de minimus* injury); "When jailers continue to use substantial force against a prisoner who has clearly stopped resisting -- whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated -- that use of force is excessive." Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008).

First, the parties dispute whether the Defendants' use of force was initiated in a good faith effort to restore discipline or maintain order. Here, Saintlot maintains there was no reason for the Defendants to enter the room or use force because he was asleep in a corner of his cell and did not fight them. ECF No. 66, p. 9.  Furthermore, Saintlot maintains that there was no need for continued force where he was already subdued, handcuffed, and not resisting commands. ECF No. 112, 4-5. Defendants do not dispute that force was used or that Saintlot did not incur injuries from the use of force. Rather, they maintain that Saintlot did not respond to their commands and it became necessary to enter the room. ECF No. 106. They maintain Saintlot became combative immediately upon their entry into his cell. Id., p. 3. These positions are diametrically opposed. This fundamental disagreement on why it became necessary for Defendants to enter Saintlot's cell creates a genuine issue of material fact regarding the essential element of an excessive force claim: whether the force was "sadistically and maliciously applied for the very purpose of causing harm." Johnson, supra. Furthermore, the amount of force applied is at issue because although there is video evidence in this case, there is no recording of the what actually occurred within Saintlot's cell. Finally, Defendants' position that summary judgment is warranted because Saintlot suffered only *de minimus* injuries from the use of force is not

persuasive, particularly, in light of the medical record and video evidence, as outlined below.

B. The Extent of Saintlot's Injuries are Not *De Minimus* and is a Genuine Issue for Trial.

Eighth Amendment claims based on *de minimus* uses of physical force are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Hudson, 503 U.S. at 8. Moreover, although a lack of injury "is not conclusive about the presence or absence of constitutional violation [,] a lack of serious injury can illustrate how much force was actually used." Walker v. City of Orlando, 368 F. App'x 955, 956 n.1 (11th Cir. 2010) (internal citation omitted); see also Stephens v. Broward Sheriff's Office, 84 F. Supp. 3d 1327, 1337-38 (S.D. Fla. Dec. 10, 2014) (considering injury to the extent that it "inform[s] the Court as to the force used by the defendant during the course of the encounter."). While nominal damages may be appropriate in the absence of physical injury, that still requires the "violation of a fundamental constitutional right." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Thus, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citing Hudson, 503 U.S. at 9).

Such an encounter involving only *de minimus* force is "insufficient, as a matter of law, to state a constitutional violation." Bryan v. Spillman, 217 F. App'x 882, 886 (11th Cir. 2007). Not "every malevolent touch . . . gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Indeed, federal courts "have routinely held that a single push, shove, punch, or blow . . . simply does not rise to constitutional dimensions." Neal v. Miller, 778 F. Supp. 378, 382 (W.D. Mich. 1991). Yet, "[a]n injury is not de minimus simply because it does not require extensive medical treatment." Philo v. Reams, Case No. 4:11-cv-394-SPM-GRJ, 2014 U.S. Dist. LEXIS 31173, *16 (N.D. Fla. Feb. 5, 2014) Report and Recommendation adopted Philo v. Reams, 2014 U.S. Dist. LEXIS 31174 (N.D. Fla., Mar. 11, 2014) (denying summary judgment as a broken rib was not considered *de minimus* injury). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Hudson, 503 U.S. at 9.

Saintlot's allegations go beyond the mere "shove, punch, or blow." Saintlot alleges that seven officers kicked, punched, and beat him for two- to three minutes while he lay on the ground "in a ball." ECF Nos. 66, 112. He alleges he suffered multiple injuries including a fracture to his right hand and broken teeth. Id. The relevant medical records submitted by Defendants and

Saintlot, are discussed in chronological order and followed by a description of the video evidence.

### 1. 2016 Medical Records

It bears noting that in the days prior to the alleged beating at Santa Rosa, Saintlot was housed at Florida State Prison-HU (FSP), was under psychiatric care given his behaviors and "hallucinations," and was being treated with a number of medications for this and other medical conditions. ECF No. 47-9, pp. 1-15. Also, between November 2 and November 7, 2016, Saintlot presented to prison medical officers for treatment to injuries related to no less than three incidents allegedly involving the use of force. On November 2, Saintlot went to the FSP emergency room and "alleged staff abuse" where he was "punched in the mouth" and "broke a tooth"; he was discharged with directions to "follow up with [a] dentist" and to "access CSC as needed." ECF No. 47-8, pp. 60-61. Two days later, on November 4, he again "alleged staff abuse." Id., pp. 80-81. No injuries were noted although Saintlot complained of pain to his right hip area and face. Id. On November 6, he again presented to medical, this time for minor abrasions to the knuckles of both hands identified as "self injurious." Id., pp. 82-83. On November 7, Saintlot presented for a post-use-of-force examination; and it was noted there was an abrasion to his right temple, a hematoma, and

redness to the front of his head. Id., p. 100. During this period at FSP, Saintlot was held under "self-harm observation status (SHOS)" because he was acting "strangely," "bizarre," and appeared to have some evidence of "psychosis." Id, pp. 62-92; ECF No. 47-9, pp. 1-17.

On November 9, the day before the incident alleged in the instant case, Saintlot was ordered transferred from FSP to Santa Rosa. ECF No. 47-9, pp. 18-21. Notably, Saintlot was admitted to the prison's crisis stabilization unit (CSU) and placed on SHOS status consistent with his status at FSP. Id., p. 15. He was placed on numerous restrictions and was only permitted to have a mattress, blanket, and shroud in his cell. Id. Saintlot remained on his medication regimen. Id., p. 21. On November 10, Saintlot went to the Santa Rosa emergency room for a post-use-of-force exam. ECF No. 47-3, pp. 11-12. According to the medical record, Saintlot was "not responding to officers during rounds," a "life safety check" was "conducted," and the "spontaneous use of force" was applied. Id. It was noted that there was blood coming from inside Saintlot's bottom lip, his left eye was swollen, and his left knuckles had minor abrasions, Id., pp. 11-12, 17; ECF No. 47-9, pp. 23-24.

Closely following the November 10th incident, Saintlot presented to the emergency room on two additional occasions for post-use-of-force examinations. On November 22, Saintlot had a "dime size" abrasion on the

right cheek and some blood in his nostril. ECF No. 47-9, pp. 32-34. On December 7, Saintlot stated the reason for this incident was because he had flashbacks of the November 10th attack. Id., p. 49, 63; see also Plaintiff's Exhibit, ECF No. 112, pp. 41, 44, 46. He reported no pain or injuries. Id.

### 2. 2017 Medical Records

Less than two months after the alleged attack by Defendants, on January 5, 2017, Saintlot presented to "sick call" complaining of pain in his right hand; it was noted "right hand/finger redness & swelling present." ECF 47-9, p. 98. He was referred to the doctor for an examination and possible x-ray. Id. On January 11, the x-ray of Saintlot's right hand was completed. Id. During this time, Saintlot remained housed at Santa Rosa. Id. According to the radiology interpretation record, the injury occurred in November 2016. ECF No. 47-10, p. 1. The record indicates "…no acute fracture or dislocation. No significant degenerative changes are noted." Id. Medical records from Lake C.I., dated January 13, also reference an x-ray of Saintlot's right hand. Id., p. 4.

By May 2017, Saintlot was transferred to Union Correctional Institution (Union). ECF No. 47-11, p. 24. On May 8, Saintlot was seen by medical for a front cracked tooth and complained "my tooth hurts when I eat"." Id., p. 30-31. He was referred to dental services. Id. On May 9, he complained that his

two front teeth were causing him pain beginning the week before. Id., p. 35. On May 20, Saintlot filed a "sick call request" for his "two front teeth to be fixed" because they were chipped. Id., p. 41. Despite the referral to dental services, Defendants do not provide any dental records; and Plaintiff's exhibits labeled as "dental records" are undated "sick call requests" to see "dental." ECF No. 112, pp. 62-66. One is largely illegible. Id., p. 62.

On July 10, Saintlot presented to the emergency room for another post-use-of-force exam. Id., pp. 72-73. It was reported there was "bleeding from [the right] hand." Id. On or about July 19, Saintlot was transferred back to Santa Rosa. Id., p. 87. Saintlot provides an additional exhibit, a "sick call request" dated December 14, 2017, where he complained of headaches resulting from an officer kicking and punching him. ECF No. 112, p. 24. It is unclear whether this is related to injuries from the November 10th incident.

### 3. 2018 Medical Records

On January 16, 2018, Saintlot filed a "sick call request" complaining of medical problems relating to an incident similar to the one he alleges in this case. ECF No. 47-12, p. 59; see also Plaintiff's exhibit ECF No. 112, p. 25. Saintlot claimed he was asleep "in the corner" when officers "came in," "jump[ed]," "punch[ed]," "kick[ed]" him, and chipped his teeth. Id. Saintlot complained of having "real bad" headaches stemming from that time. Id. On

January 22, Saintlot presented for a mental health emergency; however, it was noted that his right hand was "swollen." Id., p. 64-65; see also Plaintiff's Exhibit, ECF No. 112, pp. 37, 45. On January 29, Saintlot filed a sick call request stating:

> on Nov 10 2016 I got jump[ed] in Q-dorm mental health[.] My teeth got chip[ped], my right hand bone pop[ped] out of place to a point [it] is hard for me to write [be]cause [there] is a lot of pain. They [examined] it in 2016 but nothing happen[ed]. I still have bad head[aches], my right hand the bone popp[ed] out and my gum hurt[s] real bad.

Id., p. 73.

In "sick call requests" filed on February 4[3], February 6[4], February 25[5], and May 24[6], Saintlot made similar complaints about his right hand, which was hurting "for a while now." Id., pp. 81, 83, 91; ECF No. 47-13, p. 72. Saintlot provides an additional exhibit dated April 18, 2018, alleging the same problem with his right hand and that it had been this way since November 10, 2016. ECF No. 112, p. 29. On June 13, Saintlot refused follow up

---

[3] See also Plaintiff's Exhibit, ECF No. 112, p. 26. Plaintiff submits numerous medical exhibits (ECF No. 112, pp. 23-37) including mental health records (pp. 38-60) which at times reference the November 10 incident. Some of the exhibits are illegible.

[4] See also Plaintiff's Exhibit, Id., p. 27.

[5] See also Plaintiff's Exhibit, Id., p. 28.

[6] See also Plaintiff's Exhibit, Id., p. 30.

Case No. 3:18-CV-00441-TKW-MAF

treatment for left-shoulder pain and right-hand pain. ECF No. 47-13, pp. 77-78. Saintlot's medical record dated July 25 notes "chronic" right "hand pain" and "will x-ray [right] hand to better assess the . . . pain . . . abnormal boney (sic) prominent…" Id., pp. 86, 95; see also Plaintiff's exhibit ECF No. 112, p. 34. An x-ray of Saintlot's right hand was completed on August 1. ECF No. 47-13, p. 93. The radiology report indicated "no acute fracture or dislocation . . . No bony abnormality." Id., p. 94; see also Plaintiff's Exhibit, ECF No. 112, p. 35.

On November 28, Saintlot again alleged "staff abuse" and complained that his right wrist felt like it was broken, was swollen and painful, and that he was unable to write. ECF No. 47-14, pp. 29-30. The next day, Saintlot was examined and attributed the right "wrist pain" to a post-use-of-force incident. Id., p. 31. On December 20, Saintlot again complained of right "hand pain" due to a post-use-of-force incident. Id., pp. 39-40.

### 4. 2019 Medical Records

On January 8, 2019, Saintlot filed a "sick call request" alleging that the "staff abuse" that occurred on November 10, 2016, was the reason for the continued "pain" in his "right hand," that he did not know if the hand "was broke[n] or not," his hand swelled, he could not close it, and needed an x-ray. ECF No. 47-14, p. 42; see also Plaintiff's Exhibit, ECF No. 112, pp. 31,

33. A "knot" was noted despite the most recent "normal" x-ray in August 2018. ECF No. 47-14, p. 43; <u>see also</u> Plaintiff's Exhibit, ECF No. 112, p. 36. On February 4, Saintlot filed a "sick call request" complaining of "brain/head" pain he attributed to the November 10th beating "by 8 officers" who "kick[ed]" him "hard in [his] head." ECF No. 47-14, p. 45; <u>see also</u> Plaintiff's exhibit, ECF No. 112, p. 32.

On February 11, February 14, and February 20, 2019, Saintlot used the prison's grievance process in an attempt to retrieve his medical records, which officials denied or alternatively told him he was "on the list" for the review. ECF No. 47-14, pp. 46-48, 50. It remains unknown whether Saintlot was given access to all of his relevant medical records.

The parties dispute the extent of Saintlot's injuries and whether they are merely *de minimus*. Saintlot admits that one tooth was broken in a previous incident but that during the November 10th assault by Defendants, another tooth was broken. Saintlot also alleges that his hand was fractured during the incident and the reason there is no medical documentation to support his claims about his tooth and hand is because his medical records are "missing." This necessarily leads to another factual dispute – whether the medical records as submitted by Defendants are accurate and complete. Defendants provided hundreds of pages of medical records from various

prisons without any certification from prison authorities as to the accuracy and completeness of the records. ECF No. 47-8 through ECF No. 47-14. A broken tooth and a fractured hand are not *de minimus* injuries. Even if the alleged injuries did not require extensive medical treatment, this Court has previously stated that is not the determining factor on whether the injuries are considered *de minimus*. Philo, supra. More importantly, whether these injuries occurred during the November 10th attack is a genuine issue for trial.

One final note about Saintlot's mental health records is warranted. The Court has a reasonable concern about Saintlot's ability to continue to properly litigate this case on his own behalf. Specifically, Saintlot has received diagnoses for "schizophrenia, unspecified, or other psychosis" and "hallucinations." ECF No. 47-8, pp. 56-57, 62, 70-73. 94-95; ECF No. 47-9, p. 17; see also Plaintiff's Exhibits, ECF No. 112, pp. 38-60. If the case were to proceed to trial, Saintlot should be represented by counsel.

*5. Video Evidence*

The video evidence submitted by Defendants raises additional questions about the facts surrounding this case. There are three videos, two of which are fixed-wing views of the dorm area of the prison where Saintlot's cell was located. The first fixed-wing view begins in the moments leading up to Defendants entering Saintlot's cell and ends with Saintlot's removal from

his cell. The second fixed-wing view contains footage of Saintlot's return to his cell. The third video is the handheld-camera view initiated after Saintlot had been removed from his cell and continues through his visit to the medical unit and return to his cell. There is an apparent error in the time stamp of the fixed-wing videos, which are time-stamped in the 3:00 p.m. hour (15:00 hour); however, the handheld video exhibit contains the officers' verification that the time Plaintiff was brought to medical was approximately "2:19 p.m.," which is corroborated by the wall clock in the medical unit. ECF No. 54.[7]

Fixed-Wing Video #1 begins at approximately 15:14, with unintelligible shouting and noise not apparently attributable to the incident at issue. ECF No. 47-7.[8] The stairwell blocks the view of Saintlot's cell in the right-hand corner. Id. At approximately 15:15:12, the first officer arrived and checked the cell door window of the cell next to Saintlot's; then he checked the cell door window for Saintlot's cell. Id. Just over one minute later, at 15:16:28, a second officer arrived at Saintlot's cell door; and the first officer left. Id. The second officer then called out Saintlot by name at 15:16:35. Id. He called out Saintlot's name seeking a response no less than eleven times and asks

_____

[7] See video filename VTS_01_1.

[8] See video filename 1110 Saintlot #1. The citations to this video use the 15:00-hr timestamp.

Saintlot to "please respond." Id. Six additional officers arrived at Saintlot's cell door during this time. Id. At approximately 15:17:35, officers opened the cell door and entered Saintlot's cell. Id. The camera provides no view of the incident occurring in the cell; therefore, what occurred inside Saintlot's cell remains a genuine issue of material fact. Id. It can be heard that at least one officer directed Saintlot two times to "stop resisting." Id. No other shouting or directives are audible. Id. Less than one minute later, at 15:18:31, officers removed Saintlot from his cell handcuffed. Id. To this extent, Saintlot's allegation that he was beaten for two to three minutes or longer is dispelled. Id.

The handheld video begins with Defendant Johnson narrating the incident with Saintlot in full view of the camera. ECF No. 54. Saintlot's face appears bloody and bruised. Id. Johnson stated:

> Saintlot…was housed in 2116…he was unresponsive in his cell…several attempts were made to gain his response so we could ensure his well-being…he refused to respond…at this point his cell door was breached to conduct a life safety check. Saintlot then stood up and attempted to strike staff. Officer Whitehead utilized his shield to pin him to the ground and Saintlot continued trying to batter staff and fight…

Id.

The officers then escorted Saintlot to medical. Id. A nurse attached an arm cuff to Saintlot, seemingly, to take vital signs. Id. She wiped some blood from the sides of Saintlot's face and his mouth. Id. After a bit of time, she said to him, "Let me see your lip." Id. The nurse made no further examination of Saintlot to determine any other injuries and did not check inside his mouth to determine the extent of his injuries. Id. This is consistent with Saintlot's allegation that he was not fully examined for injuries to his tooth and hand on the date of the incident. Id. During this time, Saintlot was not talking and was nearly motionless as two officers held him by his arms. Id. At all times, there were between two and four officers in the examination room. Id. Eventually, the arm cuff was removed. Id. Captain Cannon exited the room to read a statement for the video, which mirrored Johnson's statement. Id. The nurse applied a gauze to Saintlot's lip and left it hanging. Id. Saintlot was not able to hold the gauze in place because his hands were cuffed behind his back; and the nurse left the room. Id. At approximately, 2:26 p.m., Saintlot was apparently talking, although it is not audible. Id. The nurse returned and gave Saintlot a cup, which he drank. Id. The nurse again wiped blood from his mouth. Id. At approximately 2:28 p.m., officers removed Saintlot from the medical unit without any further examination or treatment. Id. Saintlot was compliant and was returned to his cell, identified as a "SHOS Certified" cell,

which corroborates his claim that he was housed under this status. Id. Captain Cannon again appeared on video and stated that while inside the medical unit, Saintlot alleged that he was "jumped" by the officers for "no reason." Id.

Fixed Wing Video #2 begins at approximately "15:30." ECF No. 47-7.[9] Less than one minute later, six officers returned Saintlot to his cell quietly and without incident. Id.

Ultimately, Defendants fail to demonstrate that there are no genuine issues of material fact in this case. As outlined above, there are several. Accordingly, for the reasons discussed above, the Court concludes there are the following genuine disputes: (1) whether the beating occurred, as alleged by Saintlot; (2) whether Saintlot suffered the alleged injuries during the November 10 attack; and (3) the completeness and accuracy of Saintlot's medical record. Certainly, if a jury was to believe Saintlot's version of the events, a jury could find that Defendants' actions constituted excessive force. Therefore, Defendants' motion for summary judgment is due to be DENIED; and the matter should PROCEED to trial.

---

[9] See video filename 1110 Saintlot #3.

Case No. 3:18-CV-00441-TKW-MAF

C. <u>Mental and Emotional Injuries</u>

Title 42 U.S.C. § 1997e(e) provides that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

The Eleventh Circuit has determined that the phrase "federal civil actions" means all federal claims including constitutional claims. <u>Napier v. Preslicka</u>, 314 F.3d 528, 532 (11th Cir. 2000) (citing <u>Harris v. Garner</u>, 216 F.3d 970, 984-85 (11th Cir. 2000 (*en banc*). In order to satisfy § 1997e(e), the prisoner must allege physical injury that is "more than *de minimus*, but the injury need not be significant." <u>Siglar v. Hightower</u>, 112 F.3d 191, 193, (5th Cir. 1997) (citing <u>Hudson</u>, 503 U.S. at 10); <u>see</u> <u>also</u> <u>Harris v. Garner</u>, 190 F.3d 1279, 1282, 1286-87 (11th Cir. 1999) *reh'g en banc granted, vacated*, 197 F.3d 1059 (11th Cir. 1999), reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000) (*en banc*).

Here, Saintlot alleges serious physical injuries (broken, chipped teeth and a fractured hand) resulting from an alleged constitutional violation, which are more than *de minimus* injuries. As such, Saintlot's claims for any mental or emotional injuries allegedly resulting from the November 10, 2016, incident attributable to Defendants should PROCEED.

D. Punitive Damages Claim

Saintlot also seeks punitive damages against Defendants. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "While the Smith Court determined that it was unnecessary to show actual malice to qualify for a punitive award, . . . its intent standard, at a minimum, required recklessness in its subjective form." Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999). Smith refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." Smith, 461 U.S. at 45-48 (internal citation omitted).

Saintlot has sufficiently stated a claim that on November 10, 2016, Defendants acted at least with recklessness or criminal indifference to his federally protected rights. Accordingly, the punitive damages claim against Defendants should PROCEED to trial.

## VI. Conclusion and Recommendation

For the reasons stated above, it is respectfully RECOMMENDED that:

1. Defendant's Motion for Summary Judgment, ECF No. 106, be

   DENIED and the following claims PROCEED to trial:

    a.  The claims alleging excessive force in violation of the Eighth Amendment proceed against all Defendants, in their individual capacities.

    b.  The claims for compensatory damages, punitive damages, mental and emotional damages, and nominal damages proceed against all Defendants, in their individual capacities.

2.  Saintlot's claim for the retention of jurisdiction over Defendants until the practices and omissions no longer exist is far too vague to warrant further consideration. Saintlot does not seek any other injunctive relief against Defendants; therefore, his claim for extending jurisdiction should be DISMISSED.

3.  The Clerk is directed to remand the case to the Undersigned Magistrate Judge for further proceedings.

IN CHAMBERS at Tallahassee, Florida, on September 21, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's

Case No. 3:18-CV-00441-TKW-MAF

findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).